# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY JONES,<br><br>　　Plaintiff,<br><br>　　v.<br><br>ADRIAN FEINERMAN, M.D., PAM GRUBMAN, and DEBI MIDDENDORF,<br><br>　　Defendants. | Case No. 06-CV-0330-MJR-DGW |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction

Plaintiff Gregory Jones, an inmate who is currently incarcerated at the Pontiac Correctional Center, filed this action against the Defendants on April 27, 2006 (Doc. 1). Jones amended his complaint on May 14, 2007 (Doc. 32). With respect to Dr. Feinerman, Jones alleges that while Jones was incarcerated at Menard Correctional Center ("Menard"), Dr. Feinerman was deliberately indifferent to his serious medical needs because he denied Jones treatment for the bone callouses in his feet, he caused an injury to Plaintiff's shoulder and refused to write Plaintiff a permit allowing him to be handcuffed in the front, and did not prescribe Tylenol for Plaintiff's shoulder pain (*see* Doc. 33). Jones also contends that Dr. Feinerman denied him this medical treatment in retaliation for his complaints about Dr. Feinerman and a state lawsuit he filed (*Id.*).

Now before the Court is Dr. Feinerman's motion for summary judgment (Doc. 53). Having fully considered the parties' filings, the Court hereby **GRANTS** Dr. Feinerman's motion for summary judgment.

1

## B. Relevant Background Facts

While incarcerated at Menard, Plaintiff experienced a host of medical problems. His ailments included but were not limited to calluses, hypertension, vascular disease, and mental problems. Plaintiff first reported having calluses on both of his feet to Dr. Platt, another physician who practices at Menard (Doc. 53-2, ¶ 26). Dr. Platt determined that Plaintiff's calluses were recurrent and "severe" and ensured that they were trimmed on several occasions (Doc. 53-2, ¶ 48, 56). Dr. Krieg, another physician, also examined Plaintiff's callusses and similarly determined that they needed trimming (Doc. 53-2, ¶ 66). At times, due to the severity of the calluses on Plaintiff's feet, Plaintiff had a difficult time walking and was even issued a pumice stone (Doc. 53-2, ¶¶ 28, 48, 80).

Plaintiff complained to Dr. Feinerman about the calluses on his feet on January 25, 2006 (*Id.* at ¶ 88). Plaintiff told Dr. Feinerman that he wanted his calluses trimmed (*Id.*). Defendant examined Plaintiff but determined that trimming was not medically necessary at that time because Plaintiff was able to engage in activities such as weightlifting and playing football (*Id.* at ¶ 88, 157).

Dr. Feinerman next examined Plaintiff on February 21, 2006 (*Id.* at ¶ 90). To treat Plaintiff's vascular disease, Dr. Feinerman wrote out a prescription for Plaintiff to take HCTZ two times a day (*Id.*). Plaintiff also requested that the Defendant write him a pass that would allow Plaintiff to be handcuffed from the front. Two months before, another physician had denied Plaintiff's request for this same type of pass since Plaintiff's mobility was normal (Doc. 53-2, ¶ 83). Defendant similarly observed that Plaintiff was able to cross his wrists behind his back; therefore, he determined it was unnecessary for him to receive this pass (*Id.*). Plaintiff was supposed to see Dr. Feinerman again on March 7, 2006, about his blood pressure; however, Plaintiff refused to allow Dr. Feinerman to examine him (*Id.* at ¶ 91-92).

On October 13, 2006, Plaintiff was admitted to the prison's infirmary for observation due to hypertension and because Plaintiff stated he overdosed (*Id.* at ¶ 135). Upon Plaintiff's discharge from the infirmary, Dr. Feinerman ordered that no medication be given to him and that he was to have a follow up appointment with a doctor the next week (*Id.*).

On November 3, 2006, Defendant again prescribed Plaintiff HCTZ for hypertension and advised that Plaintiff needed to be re-checked in two weeks (*Id.* at ¶ 145). Plaintiff refused to take the medication Dr. Feinerman prescribed (*Id.* at ¶ 146). Plaintiff also wrote a letter to Dr. Feinerman and asked him to leave him alone and not to send him any more medication (Doc. 62-2, Exh. O). Plaintiff was transferred to Pontiac Correctional Center on December 6, 2006, and Dr. Feinerman did not examine Plaintiff again (*Id.* at 154).

### C. Summary Judgment Standard

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56 (c);** ***Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 497 (7th Cir. 1999)**; ***Dempsey v. Atchison, Topeka and Santa Fe Railway Co.*, 16 F.3d 832, 836 (7th Cir. 1994).** "The judgment sought should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56 (c).** ***Celotex Corp. v. Catrett*, 477 U.S. 317, 320 (1986).** The initial burden is upon the moving party to establish that no material facts are in dispute as to an essential element of the non-moving party's case. ***Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).** Once the moving party meets the burden, the non-moving party must come forward with evidence that establishes a genuine issue for trial. **Fed. R. Civ. P. 56(e).**

A fact is material if it is outcome determinative under applicable law. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999); *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997); *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994); *Dempsey*, 16 F.3d at 836.

In deciding such a motion, the trial court must determine whether the evidence presented by the opposing party is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). *See also Celotex*, 477 U.S. at 322-23; *Haefling,* 169 F.3d at 497-98.

## D.  Analysis

### 1.  Plaintiff's Deliberate Indifference Claims

Defendant maintains that he was not deliberately indifferent to Plaintiff's medical needs, because he examined Plaintiff when needed and he made his treatment decisions based on his professional medical judgment. He characterizes Plaintiff's deliberate indifference claim as a mere allegation that he did not provide Plaintiff with the type of treatment Plaintiff wanted. Specifically, he did not order that Plaintiff's calluses be trimmed and did not authorize a handcuff permit.

Plaintiff opposes Defendant's motion by arguing that Dr. Feinerman performed only a cursory examination and did not provide the same treatment as the two other physicians who

4

trimmed his calluses while he was incarcerated at Menard. In Plaintiff's opinion, his calluses needed to be "shaved" to walk, and Dr. Feinerman stopped providing the necessary callus treatment. Plaintiff contends that the only action Dr. Feinerman took with respect to his calluses was to advise him to use a piece of asphalt to shave them down, and although Plaintiff admits that asphalt does reduce calluses, he says it is a painful way to get that result (*see* Doc. 62-2, ¶ 11). Plaintiff further admits he refused treatment and medication from Dr. Feinerman, but states it was only because he did not trust Dr. Feinerman and was afraid of him (*see* Doc. 62-2, Exh. O, p. 8; Doc. 53-3, 92).

The Supreme Court has determined that deliberate indifference to a prisoner's serious illness or injury states a cause of action under 42 U.S.C. § 1983. ***Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976).** "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id.* This prohibition applies to "both prison doctors in their response to the prisoner's needs [and] to prison guards" who interfere with an inmate's access to medical care. *Id.* Thus, to prevail on a deliberate indifference claim, a prisoner must show that "(1) he had a serious medical need, and (2) the defendant [was] deliberately indifferent to it." ***Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001).** *See Greeno v. Daley,* **414 F.3d 645, 653 (7th Cir. 2005).**

"A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." ***Greeno*, 414 F.3d at 653; *Wynn,* 251 F.3d at 592.** To avoid summary judgment on this element, Plaintiff must demonstrate that his medical condition is "objectively, sufficiently serious." ***Greeno,* 414 F.3d at 653;** ***Foelker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005).** Deliberate indifference is shown when an inmate demonstrates that prison officials

5

"acted with a sufficiently culpable state of mind." *Greeno,* **414 F.3d at 653.** "The officials must know of and disregard an excessive risk to inmate health." *Id.*

Although Defendant disagrees, Plaintiff has established a genuine issue of material fact with respect to the question of whether his medical needs are serious. Because of his calluses, there were times when Plaintiff had a difficult time walking (Doc. 62-2, p. 7; Doc. 53-2, p. 21). Doctors other than Dr. Feinerman determined that Plaintiff's calluses needed to be trimmed on a number of occasions, and one doctor described them as "recurrent" calluses (*see* Doc. 53-2, ¶¶ 48, 56, 66). Plaintiff's shoulder pain may also be deemed serious given that Plaintiff's medical records show that he has a "history," and at least one physician at Menard did issue him a front cuff pass to help him with the pain (*see* Doc. 53-2, pp. 6, 23). Finally, Plaintiff was at one time placed in a clinic for treatment of his hypertension (Doc. 53-2, p. 26), so that condition may also constitute a serious medical need.

Plaintiff has failed to show, however, that Dr. Feinerman was deliberately indifferent to his medical needs. As noted above, Dr. Feinerman chose not to authorize a handcuff permit for Plaintiff because he determined that Plaintiff's wrists were able to touch together behind Plaintiff's back (Doc. 53-2, ¶ 83). Plaintiff argues that the only reason why Plaintiff's wrists were able to touch was because Dr. Feinerman forced them together (*see* Doc. 62-2, pp. 1-3), but Dr. Feinerman was not the only physician who found that he did not need a handcuff permit. Dr. Tarick, another physician at Menard, also denied Plaintiff a double cuff permit for a similar reason (Doc. 53-2, p. 23). This evidence supports Defendant's argument that he made his treatment decisions based on his professional judgment and not because he disregarded Plaintiff's health. *See Jackson v. Kotter*, **541 F.3d 688, 697-98 (7th Cir. 2008) (explaining that a doctor is not deliberately indifferent to an inmate's serious medical needs unless he or she makes a decision that represents "such a substantial departure from accepted**

**professional judgment, practice or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.").**

The same is true for Plaintiff's calluses and hypertension. Dr. Feinerman examined Plaintiff's calluses, and his decision not to authorize trimming for Plaintiff's calluses does not violate the Eighth Amendment. An inmate "is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm." *Forbes v*. **Edgar, 112 F.3d 262, 267 (7th Cir. 1997).** *See also Jones v. Drew,* **2007 WL 737359, \*\*4 (7th Cir. Mar. 12, 2007) (noting inmate is entitled only "reasonable" medical measures to meet a substantial risk of serious harm).** Moreover, courts give deference to the treatments of physicians, as "there is not one proper way to practice medicine in prison." *Jackson,* **541 F.3d at 698.**

There is a genuine issue of material fact as to whether Dr. Feinerman told Plaintiff to use asphalt to help the calluses on his feet, since Dr. Feinerman did not address this particular allegation in his motion. However, even if this is true, one isolated comment — while inappropriate — is not enough to preclude summary judgment. *See Weiss v. Coca-Cola Bottling Co. of Chicago,* **990 F.2d 333, 337 (7th Cir. 1993);** *see also Crews v. City of Mt. Vernon,* **567 F.3d 860, 870 (7Th Cir. 2009).** "Moreover, the mere existence of a factual dispute will not bar summary judgment unless the disputed fact is outcome determinative under governing law." *Howland v. Kilquist,* **833 F.2d 639, 642 (7th Cir. 1987);** *Hardin v. S.C. Johnson & Son, Inc*.**, 167 F.3d 340, 344 (7th Cir. 1999);** *Smith v. Severn***, 129 F.3d 419, 427 (7th Cir. 1997);** *Estate of Stevens v. City of Green Bay***, 105 F.3d 1169, 1173 (7th Cir. 1997).** Unfortunately for Plaintiff, whether he was told to use asphalt is not determinative here.

The Court also notes that Jones also claims that Dr. Feinerman was deliberately indifferent because he refused to tell Plaintiff about the results of the bloodwork that had been

drawn for the hypertension clinic. This claim must also be dismissed. According to Plaintiff, Dr. Feinerman does not remember whether he told Plaintiff about the results of the bloodwork that had been drawn for the hypertension clinic (Doc. 62-2, p. 7). But again, this fact is not material to Plaintiff's claim because Plaintiff cannot show Dr. Feinerman acted with a culpable state of mind and disregarded Plaintiff's hypertension by not informing him of the results. ***Greeno,* 414 F.3d at 653.** Dr. Feinerman examined Plaintiff several times for hypertension and prescribed him medicine that Plaintiff eventually refused. Dr. Feinerman wanted to examine Plaintiff again for this condition but Plaintiff refused to let Dr. Feinerman examine him (Doc. 53-3, ¶ 92). Plaintiff even wrote Dr. Feinerman a letter asking him to leave him alone and to stop sending him medication (Doc. 62-2, Doc. 62-2, Exh. O). Thus, Plaintiff cannot now complain that Dr. Feinerman was deliberately indifferent since Plaintiff refused the very treatment Dr. Feinerman offered on more than one occasion.

As no genuine issue of material fact exists to support Plaintiff's deliberate indifference claims, Defendant's motion for summary judgment must be granted.

**2. Plaintiff's Retaliation Claim**

Plaintiff has filed a retaliation claim against Defendant. Plaintiff alleges in his complaint that Dr. Feinerman retaliated against him for filing a lawsuit in the Illinois Court of Claims. In his response to Defendant's motion for summary judgment, Plaintiff argues that Dr. Feinerman retaliated against him by refusing to issue him a handcuff permit[1], "re-injuring" his shoulder, denying him treatment for his shoulder, and refusing to discuss his blood work. Plaintiff also submitted evidence of one grievance he filed on February 21, 2006, stating that Dr. Feinerman injured Plaintiff's shoulder on that date and claiming that he refused to review his blood work

---

[1] Plaintiff submitted evidence showing that after he left Menard, the Medical Director at Pontiac Correctional Center issued him a permit that enabled him to have "waist restraint cuffing" for one year. *See* Doc. 62-3, p. 1.

(Doc. 62-2, p. 1, 2). This grievance was denied because there was no evidence to substantiate Plaintiff's allegations (*Id.*).

Dr. Feinerman, on the other hand, argues that he made his medical decisions based solely on his professional judgment and not because of any grievance or lawsuit Plaintiff has filed. Furthermore, Dr. Feinerman states he typically does not know when an inmate files a grievance against him.

To prevail on a retaliation claim, a plaintiff must demonstrate that a defendant retaliated against him for engaging in constitutionally protected conduct. *See Babcock v. White,* **102 F.3d 267, 275 (7th Cir. 1996).** "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." ***Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).** The plaintiff must prove that his conduct was a "motivating factor" in the state official's decision to retaliate against him. ***Hasan v. United States Dept. of Labor,* 400 F.3d 1001, 1006 (7th Cir. 2005).** However, a "motivating factor" is not "necessarily the reason" the state official takes a certain action. *Id.* "A motivating factor . . . is a factor that weighs in [on] the defendant's decision to take the action complained of — in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Id.*

Plaintiff's retaliation claim against Dr. Feinerman must fail. Although Plaintiff alleged in his complaint that Dr. Feinerman retaliated against him for filing a lawsuit, Plaintiff fails to mention that lawsuit at all in his response to Dr. Feinerman's motion. Importantly, he fails to submit any evidence that the filing of any such lawsuit was a motivating consideration during treatment. And Plaintiff's allegations alone are not sufficient to withstand summary judgment.

Moreover, Dr. Feinerman allegedly "re-injured" Plaintiff's shoulder, denied him treatment for his shoulder, and denied him a handcuff permit on the same day that Plaintiff filed the grievances

about these issues. But the record is clear that Dr. Feinerman made his treatment decisions about Plaintiff's shoulder *before* the date he filed his grievance. Thus, Plaintiff's grievance could not have been a "motivating factor" for these particular actions, because the grievance did not yet exist.

The medical records do show that Dr. Feinerman examined Plaintiff for problems that related to hypertension after Plaintiff filed the grievance in February of 2006 (*see* Doc. 53-3, ¶ 145). But even if the Court believes that Dr. Feinerman refused to discuss Plaintiff's blood work, there is no evidence to support the allegation that Plaintiff's grievance was the cause.

Because no genuine issue of material fact exists to support Plaintiff's retaliation claims, Dr. Feinerman's motion for summary judgment must be granted.

### E. Conclusion

For all of the reasons explained herein, the Court **GRANTS** the Defendant's motion for summary judgment (Doc. 53). The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Dr. Feinerman and against the Plaintiff on Counts 1 and 2 at the close of the case. Consequently, Dr. Feinerman is **DISMISSED** from this action **with prejudice**.

Ducey's claims against Middendorf remain pending (Count 1), as do his claims against Grubman (Counts 1 & 2).

**IT IS SO ORDERED.**

**DATED this 13th day of August 2009.**

> **s/ Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**